FIREFIGHTERS INCORPORATED FOR RACIAL EQUALITY, a Colorado non-profit corporation; Frank E. Quintana; Fred H. Fernandez; Andrew Archuleta; Richard Nuanes; Jose F. Archuleta; Phil Apodaca; Ernest B. Arellano; Karl Cordova; Leonard V. Cardenas; James Hicks; Michael Ramos; L.M. Cruz; Raymond Gabaldon; Richard Deherrera; Nick Nuanes; Richard L. Roach; John P. Drogheo; Onesio Cole and Margarito Franco,

v.

Ted BACH, Oseald C. Abernethy, Jesse Manzanares, individually and as Commissioners of the City and County of Denver Civil Service Commission; Merle K. Wise, individually and as Chief of the Fire Department for the City and County of Denver; Dan Cronin, individually and as Manager of Safety of the City and County of Denver; and the City and County of Denver.

No. 78–K–119.

United States District Court,
D. Colorado.

June 11, 1985.

<hr>

Paul A. Baca, Denver, Colo., for plaintiffs.

Darlene Ebert, Asst. City Atty., Denver, Colo., for City and County of Denver.

Walter C. Brauer, III, Denver, Colo., for intervenors.

## MEMORANDUM OPINION AND ORDER

KANE, District Judge.

In 1978, plaintiffs brought this class action on behalf of all mexican american and black firefighters in the Denver Fire Department. They allege that defendants have discriminated against them in violation of the Civil Rights Act of 1870, 42 U.S.C. § 1981; the Civil Rights Act of 1871, 42 U.S.C. § 1983; and in violation of Titles VI and VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000d through 2000e–17. Particularly, plaintiffs challenge the defendants' seniority and promotion practices.

I previously held that the promotion practices of the Denver Fire Department have a discriminatory impact on minority firefighters. 522 F.Supp. 1120, 1126 (1981). I found the defendants' seniority policies violated Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e through 2000e–17 (1976). 522 F.Supp. 1120, 1126. On appeal, the Tenth Circuit reversed and remanded for a determination of whether the practices alleged by the plaintiffs are part of a bona fide seniority system under § 703(h) of Title VII. 731 F.2d 664, 669 (10th Cir.1984). If so, then "§ 703(h) exempts from Title VII the disparate impact of ... [such] system," *American Tobacco Co. v. Patterson,* 456 U.S. 63, 75, 102 S.Ct. 1534, 1541, 71 L.Ed.2d 748 (1982), and the plaintiffs would have to establish discriminatory treatment.

The question before me today concerns the proper allocation of the burden of proof as to whether defendants' practices are

part of a seniority system and whether that system is bona fide. Plaintiffs have moved for a determination of who has the burden of proof on these issues. Specifically, plaintiffs assert that the burden of proof should be placed on defendants to establish that the seniority system in question was not created, maintained, or implemented with the intent to discriminate. In response, defendants and intervenors contend that plaintiffs have the burden of proving the seniority system is not bona fide.

## Allocation of Burdens of Proof

The United States Supreme Court has established three-step formulations for allocating burdens of proof in disparate treatment and disparate impact cases.[1] It has not, however, addressed the allocation of burdens of proof regarding bona fide seniority systems. Absent direction on this issue, the lower courts have allocated the burdens of proof; often without clearly indicating their approach. *See, e.g., Broadnax v. Missouri Pac. R.R. Co.*, 20 Empl. Prac.Dec. (CCH) ¶ 30,132 (E.D.Ark.1978). Because the lower courts are split and there is no controlling authority on the issue, I shall determine which of the prevailing theories should be applied based on considerations such as policy rationales and fairness.

The primary purpose of Title VII was "to assure equality of employment opportunities and to eliminate those discriminatory practices and devices which have fostered racially stratified job environments to the disadvantage of minority citizens." *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 800, 93 S.Ct. 1817, 1823, 36 L.Ed.2d 668, (1973). Section 703(a) embodies this policy, prohibiting employers from discriminating "against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, ... or national origin...." 42 U.S.C. § 2000e-2(a)(1).

Another policy was recognized, however, during the congressional debate on Title VII, which conflicted with the overall purpose of Title VII. This "policy favor[s] minimal supervision by courts and other governmental agencies over the substantive terms of collective-bargaining agreements." *American Tobacco Co.*, 456 U.S.

---

1. Disparate treatment is where an employer "treats some people less favorably than others because of their race, color, ... or national origin." *International Broth. of Teamsters v. United States*, 431 U.S. 324, 335 n. 15, 97 S.Ct. 1843, 1854 n. 15, 52 L.Ed.2d 396 (1977). Disparate impact, on the other hand, involves "employment practices that are facially neutral in their treatment of different groups but that in fact fall more harshly on one group than another...." *Teamsters*, 431 U.S. 324, 336 n. 15, 97 S.Ct. 1843, 1854 n. 15, 52 L.Ed.2d 396.

In *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973), the United States Supreme Court enunciated a three-step process for distributing burdens among the parties and set forth the elements of proof necessary to establish a disparate treatment case under Title VII. The first step requires that the plaintiff establish a prima facie case of discrimination based on one or more of the prohibited classifications. *McDonnell Douglas*, 411 U.S. 792, 802, 93 S.Ct. 1817, 1824, 36 L.Ed.2d 668. Second, if the plaintiff establishes a prima facie case, the burden of going forward reverts to the defendant to "articulate some legitimate, nondiscriminatory reason" that explains his conduct. *McDonnell Douglas*, 411 U.S. 792, 802, 93 S.Ct. 1817, 1824, 36 L.Ed.2d 668. Assuming the defendant meets this burden, the burden of production shifts back to the plaintiff to show that the defendant's presumptively valid justification was in fact merely a pretext for discriminatory conduct. *McDonnell Douglas*, 411 U.S. 792, 804, 93 S.Ct. 1817, 1825, 36 L.Ed.2d 668.

The initial burden on plaintiffs in disparate impact cases is to establish a prima facie case which proves that the defendant's policy or practice has a substantial impact on members of a protected class. *Albemarle Paper Co. v. Moody*, 422 U.S. 405, 425, 95 S.Ct. 2362, 2375, 45 L.Ed.2d 280 (1975). The defendant must then come forward with proof that the practice is mandated by business necessity or that the practice has a manifest relationship to the defendant's business. *See Griggs v. Duke Power Co.*, 401 U.S. 424, 432, 91 S.Ct. 849, 854, 28 L.Ed.2d 158 (1971). If the defendant meets this burden, the plaintiff then must be given the opportunity to show that other practices or policies with a lesser differential impact on the protected class would serve the defendant's legitimate interest. *Albemarle*, 422 U.S. 405, 425, 95 S.Ct. 2362, 2375, 45 L.Ed.2d 280. "Proof of discriminatory motive ... is not required under a disparate impact theory." *Teamsters*, 431 U.S. 324, 335 n. 15, 97 S.Ct. 1843, 1855 n. 15, 52 L.Ed.2d 396.

63, 76–77, 102 S.Ct. 1534, 1541–42, 71 L.Ed.2d 748 (1982), *citing California Brewers Assn. v. Bryant*, 444 U.S. 598, 608, 100 S.Ct. 814, 820, 63 L.Ed.2d 55 (1980). Since seniority provisions "are universally included in [collective-bargaining] contracts," *Trans World Airlines, Inc. v. Hardison*, 432 U.S. 63, 79, 97 S.Ct. 2264, 2274, 53 L.Ed.2d 113 (1977), opponents to Title VII were concerned that the proposed statute might have an adverse effect on established seniority systems and on the concept of seniority. *See* H.R.Rep. No. 914, 88th Cong., 1st Sess. 64–65 (1963); U.S.Code Cong. & Admin.News 1964, p. 2355; 110 Cong.Rec. 486–89 (1964) (statement of Sen. Hill). In response to these concerns, a compromise section was introduced clarifying Title VII's effect on seniority systems. 110 Cong.Rec. 11,926, 11,931 (1964).

■ This section, 703(h), reflects the balance Congress struck between affording immediate equal employment opportunity for all and maximizing the freedom of employers and employees to set the terms and conditions of their employment relationship through collective bargaining. *American Tobacco Co.*, 456 U.S. 63, 76–77, 102 S.Ct. 1534, 1541–42, 71 L.Ed.2d 748. Section 703(h) provides:

Notwithstanding any other provision of this subchapter, it shall not be an unlawful employment practice for an employer to apply different standards of compensation, or different terms, conditions, or privileges of employment pursuant to a bona fide seniority or merit system, ... provided that such differences are not the result of an intention to discriminate because of race, color, ... or national origin....

42 U.S.C. § 2000e–2(h) (1976).

Properly read, "bona-fide seniority system" embodies the strong national policy of affording considerable latitude to the collective bargaining process, while "intent to discriminate" marks the point at which equal employment opportunity concerns must dominate. The effect of § 703(h) is to immunize bona fide seniority systems

from a challenge based on a disparate impact analysis. *See American Tobacco Co.*, 456 U.S. 63, 75, 102 S.Ct. 1534, 1541, 71 L.Ed.2d 748. In order to show that a bona fide seniority system violates Title VII, the plaintiff would have to establish discriminatory intent under a disparate treatment analysis. *See General Elec. Co. v. Gilbert*, 429 U.S. 125, 137 n. 14, 97 S.Ct. 401, 409 n. 14, 50 L.Ed.2d 343 (1976) (the plaintiff has "the traditional civil litigation burden of establishing that the acts ... complain[ed] of constituted discrimination in violation of Title VII").

However, this assumes it has been shown that the challenged practices of the defendant are part of a seniority system and that the seniority system is bona fide. Only upon such a showing is the disparate treatment theory applicable. If the challenged practices are not part of a seniority system or if that system is not bona fide, then there is no immunity under § 703(h), and the disparate impact analysis may be applied.

Allocation of burden of proof in seniority system cases has been the subject of several conflicting decisions. Some courts have placed the burden of proof on the plaintiff to show the system's lack of bona fides. *See, e.g., Day v. Patapsco & Back Rivers R. Co.*, 504 F.Supp. 1301 (D.Md.1981); *Younger v. Glamorgan Pipe & Foundry Co.*, 20 Fair Empl.Prac.Cas. (BNA) 776 (W.D.Va.1979), *aff'd*, 621 F.2d 96 (4th Cir. 1980) (per curiam); *Trent v. Allegheny Airlines, Inc.*, 471 F.Supp. 448 (W.D.Pa. 1979); *Chrapliwy v. Uniroyal, Inc.*, 458 F.Supp. 252 (N.D.Ind.1977).

Other courts, however, have viewed § 703(h) as an affirmative defense, with the defendant having the burden of proof. *See, e.g., American Tobacco Co.*, 456 U.S. 63, 86–87, 102 S.Ct. 1534, 1546–47, 71 L.Ed.2d 748 (Stevens, J., dissenting) (§ 703(h) is an affirmative defense); *Jackson v. Seaboard Coast Line Railroad*, 678 F.2d 992 (11th Cir.1982); *Myers v. Gilman Paper Co.*, 527 F.Supp. 647, 25 Empl.Prac. Dec. (CCH) ¶ 31,692 (S.D.Ga.1981); *Griffin v. Copperweld Steel Co.*, 22 Empl.Prac.

Dec. (CCH) ¶ 30,637 (N.D.Ohio 1979); *Swint v. Pullman-Standard*, 17 Fair Empl.Prac.Cas. (BNA) 730 (N.D.Ala.1978), *rev'd on other grounds*, 624 F.2d 525 (5th Cir.1980), *rev'd on other grounds*, 456 U.S. 273, 102 S.Ct. 1781, 72 L.Ed.2d 66 (1982). Thus, resolution of the burden of proof and bona fides questions depend on whether § 703(h) is construed as a clarification of the general proscriptions of § 703(a) or as an affirmative defense.

Although the cases that allocate the burden of proving lack of bona fides on the plaintiff do not articulate the reasons for doing so, it appears that a statutory construction theory purportedly justifies this approach. *See* Hillman, *Teamsters, California Brewers, and Beyond: Seniority Systems and Allocation of the Burden of Proving Bona Fides*, 54 St. John's L.Rev. 706 (1980). According to this theory, the language of § 703(h) was not intended as an affirmative defense, but rather as an explanation or clarification of what constitutes an unlawful employment practice under section 703(a). *See Franks v. Bowman Transp. Co., Inc.*, 424 U.S. 747, 761, 96 S.Ct. 1251, 1262, 47 L.Ed.2d 444 (1976) ("the thrust [of § 703(h)] is directed toward defining what is and what is not an illegal discriminatory practice. . . .").

As a clarification or definition of what constitutes an "illegal employment practice", and since it closely follows the language in § 703(a), § 703(h) arguably could be read as part of the general clause which confers the substantive right. Where a statute creates a substantive right while simultaneously providing for exceptions to that right, application of the statute is conditioned on the nonexistence of the exception. *See, e.g., Protective Life Ins. Co. v. Swink*, 222 Ala. 496, 132 So. 728, 729 (1931). Therefore, as the argument goes, plaintiffs asserting rights under Title VII should have the burden of proving the nonexistence of the exception; that a seniority system is not bona fide.

I disagree that this statutory construction theory should be applied to allocate the burden of proving lack of bona fides on the plaintiff. *See Swint*, 17 Fair Empl.Prac. Cas. (BNA) 730, 732 (rejecting statutory construction theory). This theory fails to establish that Congress intended § 703(h) to be a part of the general clause, § 703(a), and not a separate exception; even though Senator Humphrey told Congress that § 703(h) "merely clarifies [Title VII's] intent and effect." 113 Cong.Rec. 12,723. It is also not shown that Congress intended that the nonexistence of the exception in § 703(h) act as a condition to the application of Title VII.

Moreover, this theory ignores those cases which have generally treated statutory exceptions from remedial statutes as affirmative defenses. *See, e.g., County of Washington v. Gunther*, 452 U.S. 161, 101 S.Ct. 2242, 68 L.Ed.2d 751 (1981) (considered other exemptions from Title VII found in Equal Pay Act, 29 U.S.C. § 206(d), and incorporated by reference into § 703(h), to be affirmative defenses); *United States v. First City Nat. Bank of Houston*, 386 U.S. 361, 87 S.Ct. 1088, 18 L.Ed.2d 151 (1967) (statutory exemption from the antitrust laws found in 12 U.S.C. § 1828(c)(5)(B) of the Bank Merger Act is an affirmative defense); *Rachback v. Cogswell*, 547 F.2d 502, 505 (10th Cir.1976) (statutory exemption from the operation of the Truth in Lending Act must be pled as an affirmative defense); *Wirtz v. C & P Shoe Corp.*, 336 F.2d 21, 26 & n. 1 (5th Cir.1964) (statutory exception from the Fair Labor Standards Act must be pled as an affirmative defense).

Finally, § 703(h) itself has been held to constitute an affirmative defense. *Jackson*, 678 F.2d 992, 1013. The Eleventh Circuit Court of Appeals, in *Jackson*, decided that § 703(h) fell within the general rule that statutory exemptions from remedial statutes are affirmative defenses because "§ 703(h) serves to exempt from Title VII the disparate impact of a bona fide seniority system." *Jackson*, 678 F.2d 992, 1013; *see also Swint*, 17 Fair Empl.Prac.Cas. (BNA) 730; *Myers*, 527 F.Supp. 647; *Griffin*, 22 Empl.Prac.Dec. (CCH) ¶ 31,692. Justice Stevens, in his dissenting opinion in

*American Tobacco Co.*, stated that "[s]ection 703(h) provides an affirmative defense for an employer whose administration of a bona fide seniority or merit system has produced consequences that appear to discriminate against a member of a particular race, religion, or sex." *American Tobacco Co.*, 456 U.S. 63, 86–87, 102 S.Ct. 1534, 1546–47, 71 L.Ed.2d 748 (Stevens, J., dissenting).

Considerations of fairness also require that the defendant have the burden of proving its seniority system is bona fide. As the Eleventh Circuit stated in *Jackson*, "requiring the § 703(h) exemption to be pled as an affirmative defense promotes fairness ... [because] [i]t places the burden of pleading on the party who will be benefited by the departure from the normal operation of Title VII, and permits plaintiffs to proceed without the undue burden of having to anticipate a § 703(h) defense...." *Jackson*, 678 F.2d 992, 1013. Additionally, the employer may have superior access to proof on this issue. Presumptions shifting the burden of proof are often created to conform with a party's superior access to the proof. *See* McCormick, *Law of Evidence* §§ 337, 343 (2d ed. 1972); James, *Burdens of Proof*, 47 Va.L. Rev. 51, 61 (1961).

For these reasons, I reject the statutory construction theory which allocates the burden to the plaintiff to prove lack of bona fides. Instead, I find that § 703(h) constitutes an affirmative defense. As an affirmative defense, the defendant may seek to establish that the personnel decisions involved were made pursuant to a bona fide seniority system. At this stage, the issues are limited to: (1) whether the practice is within the scope of § 703(h), *see California Brewers Assn. v. Bryant*, 444 U.S. 598, 100 S.Ct. 814, 63 L.Ed.2d 55; and (2) whether the system is bona fide.

▇ On the issue of whether the seniority system is bona fide, I recognize that the test for bona fides requires that the system be judged in light of the "totality of circumstances," *James v. Stockham Valves & Fittings Co.*, 559 F.2d 310, 352 (5th Cir.

1977), with emphasis on the following factors:

First; a court must determine whether the system "operates to discourage all employees equally from transferring between seniority units." ... Second, a court must examine the rationality of the departmental structure, upon which the seniority system relies, in light of the general industry practice ... Third, a court had to consider "whether the seniority system had its genesis in racial discrimination," ... by which it meant the relationship between the system and other racially discriminatory practices ... Finally, a court must consider "whether the system was negotiated and has been maintained free from any illegal purpose".

*Swint*, 456 U.S. 273, 279–81, 102 S.Ct. 1781, 1785–86, 72 L.Ed.2d 66 (citations omitted).

The first two factors, neutrality and rationality, are obviously related to the issue of bona fides and serve to promote the policy of minimal interference with collective bargaining. The third and fourth factors, however, are more appropriately related to discriminatory intent and to the conflicting congressional policy of affording immediate equal employment opportunity for all. By combining these factors, the issues of a seniority system's bona fides and the defendant's intent are merged and, therefore, blurred.

▇ In order to help focus my decision making on the two conflicting policies expressed in § 703(h), it is necessary to separate the issues of bona fides and intent to discriminate. *See* Comment, *Employment Discrimination—Seniority Systems Under Title VII*, 62 N.C.L.Rev. 357, 376–80 (1984). Accordingly, in assessing the system's bona fides, I will consider only whether the system is facially neutral and whether it rationally furthers some legitimate employer or employee purpose. If the system is bona fide, then the plaintiff will bear the burden of proving that the otherwise bona fide seniority system results from an intent to discriminate. At this point, the third and fourth factors of

the above test become relevant. This allocation of the burden of proof is consistent with current practice under any theory of liability when intentional discrimination is an issue. *See General Elec. Co.*, 429 U.S. 125, 137 n. 14, 97 S.Ct. 401, 409 n. 14, 50 L.Ed.2d 343 (the plaintiff has "the traditional civil litigation burden of establishing that the acts ... complained of constitut[ed] discrimination in violation of Title VII").

In sum, I employ a three-step analysis to allocate burdens of proof regarding bona fide seniority systems under § 703(h). First, the plaintiff is required to establish a prima facie case of discrimination under either a disparate treatment or impact theory. Second, as an affirmative defense, the defendant may seek to establish that the personnel decisions involved were made pursuant to a bona fide seniority system. At this stage, the issues are limited to: (1) whether the practice is within the scope of § 703(h); and (2) whether the system is bona fide. On the latter issue, defendant must establish that the system is facially neutral and that it rationally furthers some legitimate purpose. Third, the plaintiff bears the burden of proving that the otherwise bona fide seniority system results from an intent to discriminate.

By separating intent to discriminate from bona fide, this approach to allocation of burdens of proof gives each party the affirmative proposition. Further, it will help me to focus on the two conflicting policies expressed in § 703(h).