870 F.2d 386
 49 Fair Empl.Prac.Cas. 400,
49 Empl. Prac. Dec. P 38,872
Sheila ALTMAN, Kathie Mosqueda and Alicia Ramirez,
Individually and on Behalf of a Class, Plaintiffs-Appellants,
v.
AT & T TECHNOLOGIES, INC., Defendant-Appellee.
 No. 88-1071.
 United States Court of Appeals,
Seventh Circuit.
 Argued Sept. 26, 1988.
Decided March 1, 1989.
 
 Kenneth N. Flaxman, Kenneth N. Flaxman, P.C., Chicago, Ill., for plaintiffs-appellants.
 Charles C. Jackson, Seyfarth Shaw Fairweather & Geraldson, Chicago, Ill., for defendant-appellee.
 Before COFFEY, EASTERBROOK and KANNE, Circuit Judges.
 COFFEY, Circuit Judge.
 
 
 1
 Sheila Altman, Kathie Mosqueda and Alicia Ramirez, individually and on behalf of a class, appeal the district court's order entering summary judgment in favor of AT & T Technologies, Inc. in a sex discrimination case brought under Title VII, 42 U.S.C. Secs. 2000e et seq. We affirm.I
 
 
 2
 At various times during 1982 and 1983, AT & T Technologies, Inc. ("AT & T") laid off production workers from its Hawthorne Works facility. The total number of workers laid off at the facility was 418, 153 were males, 265 were females. The workers were in grade 32, 33 and 34 production positions. The plaintiffs consist of a class of female workers laid off during this period. All of the employees were laid off pursuant to the terms of a collective bargaining agreement between Local 1859 of the International Brotherhood of Electrical Workers ("IBEW") and AT & T.
 
 
 3
 In May 1983, twenty-eight of the grade 32 and 33 positions were vacant. AT & T filled these positions with male employees referred to as "tradesmen." In June, July and September 1983, AT & T once more filled a total of seven other available grade 32 and 33 production positions with male tradesmen. Under Article 27 of the collective bargaining agreement, these vacancies were filled by "surplus" employees, active employees who were not laid off but who were designated for layoff. Article 27 of the collective bargaining agreement provides that active "surplus" employees are to be given positions prior to positions being made available to "laid-off" employees. Under this system priority was given to surplus workers from Local 1859. The remaining positions were then filled with active surplus workers from another Local, No. 1864.
 
 
 4
 The plaintiffs brought suit and alleged that AT & T's action in filling the vacant positions with male tradesmen rather than the predominantly female laid-off workers had a disparate impact on females contrary to Title VII, 42 U.S.C. Secs. 2000e et seq. AT & T responded that the collective bargaining agreement (Article 27) gave the company the right to fill the positions from the active "surplus" employees pool rather than laid-off workers, in conformity with a bona fide seniority system and its actions were, thus, lawful under section 703(h) of Title VII.
 
 
 5
 The district court granted summary judgment for AT & T. The district court concluded that the plaintiffs had not "conclusively demonstrated the disparate impact [upon] the women on layoff," but the plaintiffs had raised a question as to whether the collective bargaining agreement (Article 27) had that effect. However, the court found that AT & T had effectively rebutted the plaintiffs' prima facie case of discrimination with the presentation of valid business reasons for its policy of utilizing active workers. In addition, the court ruled that AT & T acted pursuant to a bona fide seniority system in filling the positions.
 
 II
 
 6
 Section 703(h) of Title VII, 42 U.S.C. Sec. 2000e-2(h), provides, in pertinent part:
 
 
 7
 "Notwithstanding any other provision of this subchapter, it shall not be an unlawful employment practice for an employer to apply different standards of compensation, or different terms, conditions, or privileges of employment pursuant to a bona fide seniority or merit system ... provided that such differences are not the result of an intention to discriminate because of race, religion, sex or national origin."
 
 
 8
 Section 703(h) means that a showing of disparate impact is "insufficient to invalidate a [bona fide] seniority system." Pullman Standard v. Swint, 456 U.S. 273, 277, 102 S.Ct. 1781, 1784, 72 L.Ed.2d 66 (1981). Therefore "the operation of a seniority system cannot be an unlawful employment practice even if the system has some discriminatory consequences." Trans World Airlines, Inc. v. Hardison, 432 U.S. 63, 82, 97 S.Ct. 2264, 2276, 53 L.Ed.2d 113 (1977). We have previously "recognized that Title VII protects the operation of [a] seniority agreement unless the agreement was adopted with the intent to discriminate." Mozee v. Jeffboat, Inc., 746 F.2d 365, 374 (7th Cir.1984). The plaintiffs have not argued that Article 27 of the collective bargaining agreement was agreed upon by the IBEW and AT & T with any discriminatory purpose or motive. Thus, if Article 27 of the collective bargaining agreement is a bona fide seniority system, the district court's order of summary judgment must be affirmed.
 
 
 9
 Our decision on the question of whether Article 27 qualifies as a bona fide seniority system is controlled by the United States Supreme Court's decision in California Brewers Association v. Bryant, 444 U.S. 598, 100 S.Ct. 814, 63 L.Ed.2d 55 (1980). That case involved a seniority system for layoffs and recall in which "permanent" employees (those working over forty-five weeks in one classification one calendar year) were accorded privileges within the class of permanent employees in order of plant seniority, but were given preference over all "temporary" or "new" employees irrespective of the amount of time spent working for the employer. See 444 U.S. at 602-03, 100 S.Ct. at 817-18. "Temporary" employees were delineated as those employees who were not as of that date classified as permanent, but who had been employed by the Company for at least sixty working days in the preceding calendar year. See id. at 603, 100 S.Ct. at 818. Those employees were accorded privileges within the class of temporary employees in order of plant seniority and were given preference over "new" employees. See id. Employees who failed to qualify as permanent or temporary employees were new employees and were to be accorded privileges within the class of new employees in order of plant seniority.[1]
 
 
 10
 In ruling that the forty-five week requirement for qualification as a "permanent" employee was part of a bona fide seniority system, the Court observed that "the principal feature of any and every 'seniority system' is that preferential treatment is dispensed on the basis of some measure of time served in employment." Id. at 606, 100 S.Ct. at 819. However, the definition of a seniority system is not limited to rewarding of length of employment, it can include ancillary rules that insure the proper working of the seniority system:
 
 
 11
 "[B]y legislating with respect to 'systems' of seniority in [section] 703(h), Congress in 1964 quite evidently intended to exempt from the normal operation of Title VII more than simply those components of any particular seniority scheme that, viewed in isolation, embody or effectuate the principle that length of employment will be rewarded. In order for any seniority system to operate at all, it has to contain ancillary rules that accomplish certain necessary functions, but which may not themselves be directly related to length of employment. For instance, every seniority system must include rules that delineate how and when the seniority time clock begins ticking, as well as rules that specify how and when a particular person's seniority may be forfeited. Every seniority system must also have rules that define which passages of time will 'count' toward the accrual of seniority and which will not. Every seniority system must, moreover, contain rules that particularize the types of employment conditions that will be governed or influenced by seniority, and those that will not. Rules that serve these necessary purposes do not fall outside [section] 703(h) simply because they do not, in and of themselves, operate on the basis of some factor involving the passage of time."
 
 
 12
 Id. at 607-08, 100 S.Ct. at 820-21 (footnotes omitted).
 
 
 13
 In this case Article 27 of the collective bargaining agreement follows general seniority principles stating that "term of employment" among still active surplus employees will govern the determination of who will be assigned to fill a position.[2] The seniority principle is also generally observed with laid-off employees recalled to work status in order of their seniority. However, Article 27 also contains an ancillary rule, not unlike that in California Brewers, stating that "surplus" active employees would be assigned to work status before jobs are open to laid-off workers. Ancillary rules providing for different types of seniority rights for various classifications of employees and former employees is a common feature of bona fide seniority systems.[3] The ancillary rules providing for different treatment for active employees and laid-off employees are not "employment rules [that] depart fundamentally from commonly accepted notions concerning the contours of a seniority system." California Brewers, 444 U.S. at 608, 100 S.Ct. at 820. Indeed, the record sets forth that it is the practice in the industry for IBEW to agree to collective bargaining agreements in which seniority rights of laid-off workers are subordinated to those of active workers. Similarly, the Supreme Court contemplated that ancillary rules could provide that seniority rights would be affected by lack of active employment. The Court stated: "For example, a collective bargaining agreement could provide that accumulated seniority rights are permanently forfeited by voluntary resignation, by severance for cause, or by nonemployment at a particular plant or industry for a certain period." California Brewers, 444 U.S. at 607 n. 18, 100 S.Ct. at 820 n. 18. The subordination of the rights of laid-off employees to those of still active employees is a legitimate feature of a bona fide seniority system.
 
 
 14
 We conclude that California Brewers dictates that the combination of length of service considerations and ancillary rules found in Article 27 of the collective bargaining agreement qualifies as a bona fide seniority system. Because AT & T acted pursuant to a bona fide seniority system, its decision concerning the individuals who would fill the vacant positions is not subject to attack under Title VII.[4] The district court's order granting summary judgment to AT & T is
 
 
 15
 AFFIRMED.
 
 
 
 [1]
 See id. The seniority system involved in California Brewers also applied to hiring. In that context first preference was given to employees of the involved employer. Thereafter, the hierarchy of permanent, temporary and new employees was followed in order of "industry" seniority. See id. at 603-04, 100 S.Ct. at 818-19
 
 
 [2]
 "Term of employment" is not specifically defined in Article 27 of the collective bargaining agreement. However, as AT & T states in its answers to the Plaintiffs' First Set of Interrogatories, "effective service date [with AT & T] is the same as 'term of employment' ... used in Article[ ] 27 of the collective bargaining agreement[ ]."
 
 
 [3]
 See generally Teamsters v. United States, 431 U.S. 324, 97 S.Ct. 1843, 52 L.Ed.2d 396 (1977) (approval of a seniority system that separated "line drivers" from "city drivers"). The Supreme Court stated: "The seniority system in this litigation is entirely bona fide. It applies equally to all races and ethnic groups.... The placement of line drivers in a separate bargaining unit from other employees is rational and in accord with industry practice, and consistent with National Labor Relations Board precedent." Id. at 355-56, 97 S.Ct. at 1864-65 (footnote omitted)
 
 
 [4]
 Since we have concluded that Article 27 of the collective bargaining agreement is a bona fide seniority system, it is not necessary for us to review the district court's finding that AT & T's decision to utilize the tradesmen was justified by valid business reasons