944 F.2d 1431
 57 Fair Empl.Prac.Cas. (BNA) 144,
57 Empl. Prac. Dec. P 41,095
Vincent F. SHUTT, Plaintiff-Appellee,
v.
SANDOZ CROP PROTECTION CORPORATION, a New York corporation;
Zoecon Corporation, a Delaware corporation,
Defendants-Appellants.
 No. 89-35502.
 United States Court of Appeals,
Ninth Circuit.
 Argued and Submitted Dec. 4, 1990.
Decided Jan. 16, 1991.
As Amended May 31, and Sept. 30, 1991.
 
 Paul J. Cherner, Paul E. Bateman, Steven L. Hamann, Sachnoff & Weaver, Chicago, Ill., for defendant-appellant Sandoz Crop Protection Corp.
 John S. Moore, Richard R. Johnson, Velikanje, Moore & Shore, Yakima, Wash., for plaintiff-appellee Shutt.
 Appeal from the United States District Court for the Eastern District of Washington.
 Before GOODWIN, Chief Judge, WRIGHT and NOONAN, Jr., Circuit Judges.
 NOONAN, Circuit Judge:
 
 
 1
 Vincent F. Shutt, a citizen of the state of Washington, brought suit against Sandoz Crop Protection Corporation (Sandoz), a New York corporation, and Zoecon Corporation (Zoecon), a Delaware corporation, alleging that he had been discharged by the defendants in violation of the Age Discrimination in Employment Act (ADEA), 29 U.S.C. §§ 621-634, and the Washington law against discrimination, Wash.Rev.Code Ann. § 49.60.010 et seq. After a bench trial judgment was given for Shutt. We reverse.
 
 FACTS
 
 2
 Shutt was born on April 3, 1930. He went to work for the Crop Protection Division of Sandoz in January 1980 as a salesman of agricultural chemicals. His territory included Washington, Oregon, Idaho, and Montana. In 1984 Sandoz acquired Zoecon, and Shutt was then employed by the Crop Protection Division of Zoecon.
 
 
 3
 Throughout the period of employment by Sandoz and Zoecon Shutt's performance appraisals indicated that his work was satisfactory. For the first six months of 1986 his sales of the various pesticides for which he was responsible were in excess of the budget assigned to him for his territory.
 
 
 4
 In the spring of 1986 Sandoz bought the agribusiness of Velsicol Chemical Corporation. Following the sale this business was known as V.S. Crop Protection Corporation (V.S. Crop). In May 1986 Sandoz announced its intent to merge the Crop Protection Division of Zoecon with V.S. Crop, effective June 2, 1986. As of this date the Crop Protection Division of Zoecon became subject to the management of V.S. Crop.
 
 
 5
 V.S. Crop was a much larger operation than Zoecon. Its sales in 1985 totaled $100 million, while Zoecon's were $21 million. V.S. Crop had 85 sales representatives, Zoecon 21. V.S. Crop's sales were dominated by a few products such as Banvel, a dicamba-based herbicide. Zoecon's products did not include Banvel or any other dicamba-based pesticide.
 
 
 6
 In the reorganization under the supervision of V.S. Crop, 79 sales territories were created. Because the combined sales forces of Zoecon and V.S. Crop totaled 106 salesmen, there were 27 more sales representatives than there were sales territories. It became a business necessity for a number of salesmen to be terminated. All of the persons making decisions for the merged company were former managers of V.S. Crop.
 
 
 7
 In the entire pool of V.S. Crop and Zoecon employees, there were 32 employees over 40 and 74 employees under 40 before the reduction in force. Of the 21 Zoecon salesmen 11 were 40 or older and 10 were under 40. Six of the Zoecon salesmen were terminated, one was given a chance to transfer, and 14 were retained. Of the six who were terminated, five were 40 or older. Shutt was among those terminated. Of the V.S. Crop salesmen terminated, two were over 40 and two were under 40. In all, 21 of the 85 original V.S. Crop sales representatives were over 40.
 
 
 8
 The decision to terminate was based on subjective evaluation of the work of the salesmen. As the new managers were not familiar with Zoecon they relied in part on a ranking of salesmen for Zoecon made by its former national sales director. This ranking was not followed slavishly. For example, Mike Svoboda, age 63, who was ranked eighth in the Western Region, was offered a chance at a transfer, while Shutt, who was ranked seventh in the Western Region, was fired. In the Eastern Region the two men at the top of the list, who were over 40, were retained, but of the five men at the bottom of the list two were also retained who were under 40 and three were discharged who were respectively 66, 38 and 54. The trial court concluded that the list had not been relied on.
 
 
 9
 Shutt's discharge was effective July 15, 1986. His territory was then covered by four former V.S. Crop salesmen, of whom three were under 40.PROCEEDINGS
 
 
 10
 Shutt brought suit, charging age discrimination. The district court concluded as a matter of law that
 
 
 11
 "the manner in which the structure of the new company's sales organization was decided, and the practices used by the defendants in selecting which individual sales representatives from Velsicol/V.S. Crop Protection and Zoecon would be retained or terminated, although facially neutral in appearance, had a harsh, disparate and discriminatory impact upon Zoecon sales representatives age 40 and over, including the plaintiff. The statistical evidence in this regard is compelling, and no reasonable trier of fact could ignore it. It is apparent from the evidence that there was a youth movement within the new company."
 
 
 12
 The district court gave judgment for the plaintiff. The defendants appealed.
 
 ANALYSIS
 
 13
 This case was decided as a "disparate impact" case where the discriminatory effect of an employment practice, neutral on its face, is shown by statistical evidence. See Watson v. Fort Worth Bank & Trust, 487 U.S. 977, 986-87, 108 S.Ct. 2777, 2784-85, 101 L.Ed.2d 827 (1988). It is established that a subjective method of selection may constitute such an employment practice. Id. at 991, 108 S.Ct. at 2787. At the same time it has been cautioned that once the practice has been identified, the statistical disparities must be "sufficiently substantial that they raise ... an inference of causation." Id. at 995, 108 S.Ct. at 2789. The statistical evidence may not be probative if the data are "small or incomplete." Id. at 996-97, 108 S.Ct. at 2790.
 
 
 14
 The district court reached its conclusion as to discriminatory impact by looking at an exceedingly small class of employees, the 21 former salesmen of Zoecon. The district court offered no explanation why it chose this segment of the merged company as its sample. True, these persons had once worked for Zoecon as a separate entity, but the Zoecon salesmen had been merged with sales representatives from V.S. Crop and there was a single business with sales representatives that now numbered 106. All employees of the merged corporations were reviewed subjectively; to carve out the former Zoecon employees was arbitrary. No doubt the V.S. Crop managers favored their former employees: that may have been favoritism, it was not age discrimination. When a merger occurs, it is often the harsh reality that one company is dominant and the other company's employees are more easily terminated. See Rose v. Wells Fargo & Co., 902 F.2d 1417 (9th Cir.1990) (merger of Wells Fargo and Crocker National banks displaced Crocker employees disproportionately).
 
 
 15
 There were discharges from the former sales representatives of the Velsicol/V.S. Crop group as well as from the former Zoecon group. In the Velsicol group two discharged were over 40 and two were under 40. When the discharged employees of the old Zoecon group are added, there were seven discharged who were over 40 and four who were under 40. Obviously more persons over 40 than under 40 were terminated. The group of 11, however, is so small that it does not alone suffice to establish a statistical pattern that could conclusively be identified as discriminatory. Moreover, Shutt concedes that there was no discrimination against the former Velsicol/V.S. Crop group. The employment practice to which he objects he contends was directed only against the Zoecon group. The Zoecon group does not prove his case.
 
 
 16
 In Sengupta v. Morrison-Knudsen Co., 804 F.2d 1072 (9th Cir.1986), we faced an analogous situation. In that case, Sengupta belonged to Department 222 within the Mining Group of the Morrison-Knudsen Co. Id. at 1073. Layoffs precipitated by the shale oil industry collapse hit Sengupta's department harder than the Mining Group as a whole. Id. at 1073-74. Sengupta claimed that the proper labor pool from which to draw statistical evidence of race discrimination was his department, consisting of 28 persons, rather than the Mining Group, consisting of 281 persons. Id. at 1074. We rejected that argument, stating:
 
 
 17
 "Department 222 is too small. It had only 28 employees at the time of Sengupta's discharge.... The problem with small labor pools is that slight changes in the data can drastically alter appearances. Consequently, in 1979, the EEOC concluded that statistics from small applicant pools such as a pool of 30 persons are not dispositive. 44 Fed.Reg. 11,999 (1979).
 
 
 18
 By necessity, courts sometimes must rely on statistics derived from small sample groups. Not to do so would deny employees in small companies some of the protections that Title VII provides. [Morrison-Knudsen] is not, however, a small company; nor is the Mining Group a small group. There exists no necessity to employ a small group." Id. at 1076.
 
 
 19
 We went on to say, "[w]hen the relevant statistical pool, the entire Mining Group, is considered, there is no disparate impact." Id. at 1077. So here, there existed no necessity to employ a small group. The relevant pool was 106 sales persons. When that pool is considered, no disparate impact has been shown. Shutt's case evaporates.
 
 
 20
 Shutt also challenged Sandoz's termination decisions under the Washington law against age discrimination, Wash.Rev.Code Ann. § 49.60.010 et seq. In Washington, however, disparate impact analysis does not extend to subjective, discretionary employment practices. Shannon v. Pay n' Save Corp., 104 Wash.2d 722, 709 P.2d 799, 806-07 (1985); Oliver v. Pacific Northwest Bell Co., 106 Wash.2d 675, 724 P.2d 1003, 1006 (1986). Shutt therefore failed to state a claim of disparate impact age discrimination under Washington law.
 
 
 21
 The judgment is REVERSED and the case REMANDED with instructions that judgment be entered for the defendants.