EQUAL EMPLOYMENT OPPORTUNITY COMMISSION, Plaintiff–Appellant,

v.

FRANCIS W. PARKER SCHOOL, Defendant–Appellee.

No. 93–3395.

United States Court of Appeals, Seventh Circuit.

Argued April 20, 1994.

Decided Oct. 21, 1994.

Rehearing and Suggestion for Rehearing En Banc Denied Nov. 18, 1994.*

* The Honorable Joel M. Flaum and the Honorable Ilana D. Rovner took no part in the consideration of this petition.

1074

Gail S. Coleman (argued), E.E.O.C., Office of Gen. Counsel, Washington, DC, Sharon A. Seeley, John C. Hendrickson, Gordon Waldron, E.E.O.C., Chicago, IL, for plaintiff-appellant.

Don Sampen (argued), Gayle M. Meadors, Charles L. Michod, Jr., Martin, Craig, Chester & Sonnenschein, Chicago, IL, for defendant-appellee.

Steven S. Zaleznick, Cathy Ventrell-Monsees, Thomas W. Osborne, American Ass'n of Retired Persons, Washington, DC, for American Ass'n of Retired Persons, amicus curiae.

Before BAUER, and CUDAHY, Circuit Judges, and GRANT, District Judge.**

BAUER, Circuit Judge.

The United States Equal Employment Opportunity Commission ("EEOC") brought an action against the Francis W. Parker School ("Parker") alleging that in its 1989 hiring of a drama teacher, the school violated the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. §§ 621–634. The district court granted summary judgment in favor of Parker. We affirm.

## I.

Parker is a private primary and secondary school located in Chicago's Lincoln Park area. The principal of the school has ultimate authority as to decisions on hiring and firing of teachers. Incumbent teachers' salaries are determined by a twenty-two-step system which links salary to work experience. As a matter of policy, Parker has also used the step system to determine the salaries it will pay new teachers by crediting them for prior teaching experience they have had elsewhere.

When a teacher left Parker's drama department in the fall of 1988, Paul Druzinsky, the head of the department, was asked to search for a replacement. Because of fiscal constraints, Parker's principal, John Cotton, told Druzinsky that the position would pay an annual salary of no more than $28,000. The list of candidates was narrowed to three, all of whom were interviewed between March 14 and March 24 of 1989. On March 27, Parker hired Nancy Bishop as the school's new full-time drama teacher. Bishop had at the time a year of experience and was to start at an annual salary of $22,000.

In the meantime, on March 13, after Druzinsky had announced the three finalists for the position, one of Parker's music teachers asked Druzinsky if he would review the resume of a drama teacher named Harold Johnson. Johnson was sixty-three years old and claimed to have thirty years of experience. Druzinsky called Johnson a week later to inform him that he would not be hired. One of the reasons given for the decision was that Johnson qualified for a salary higher than Parker could afford. . Druzinsky claims that he also told Johnson that he was not considered for the position because Druzinsky had received Johnson's resume after the search process was over and the final candidates had been chosen. Johnson denies that Druzinsky ever mentioned this.

On Johnson's behalf, the EEOC filed this lawsuit alleging that Parker's conduct constituted disparate treatment and disparate impact in violation of the ADEA. Parker's first motion for summary judgment was denied on August 27, 1992. In light of the Supreme Court's decision in *Hazen Paper Co. v. Biggins*, — U.S. —, 113 S.Ct. 1701, 123 L.Ed.2d 338 (1993), Parker requested that the court reconsider its ruling. The court granted the request, and on June 14, 1993, granted Parker's motion for summary judgment on the EEOC's disparate treatment claim. Parker followed up with a motion for summary judgment on the EEOC's disparate impact claim, and again relying on *Hazen Paper*, the court granted this motion. The EEOC appeals only the decision on its claim of disparate impact.

## II.

We review a decision granting summary judgment *de novo*. *Doe v. Allied Sig-*

---

** The Honorable Robert A. Grant, United States District Judge for the Northern District of Indiana, is sitting by designation.

*nal Inc.*, 925 F.2d 1007, 1008 (7th Cir.1991). Summary judgment is appropriate when the record, viewed in a light most favorable to the nonmoving party, reveals that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c).

Drafters of the ADEA relied to a large extent on the language of Title VII of the Civil Rights Act of 1964. 42 U.S.C. § 2000e. As a result, "disparate treatment" and "disparate impact," terms traditionally used to describe theories of relief under Title VII have been incorporated into the ADEA lexicon. The theories can briefly be described as follows.

■ Disparate treatment occurs when an employee is treated less favorably simply because of race, color, sex, national origin, or in our case, age. This is the most obvious form of discrimination. To be successful on this type of claim, proof of discriminatory motive is critical. *International Bhd. of Teamsters v. United States*, 431 U.S. 324, 335 n. 15, 97 S.Ct. 1843, 1854 n. 15, 52 L.Ed.2d 396 (1977).

■ Disparate impact is the result of more subtle practices, which on their face are neutral in their treatment of different groups but which in fact fall more harshly on one group than another. No proof of discriminatory motive is necessary, but if the practice is found to be justified by business necessity, the claim will fail. The EEOC claims that due to the statistically significant relationship between age and work experience, by setting a low maximum salary limit, Parker excluded a disproportionate percentage of applicants over the age of forty from consideration for the teaching position.[1] Because no business justification was offered in defense of this policy, the EEOC concludes that Parker's process in hiring a new drama teacher violated the dictates of the ADEA.

We begin our analysis with a brief discussion of the Supreme Court's decision in *Hazen Paper*. Walter Biggins, a sixty-two year old technical director for the Hazen Paper

Company was fired from his position in 1986. Hazen Paper's pension liability vested after an employee completed ten years of service. Biggins's pension benefits would have vested had he worked a few more weeks. As an alternative to his release, Hazen Paper offered to retain Biggins as a consultant, a position which would not have allowed Biggins's pension benefits to vest. Biggins brought an ERISA and ADEA claim against Hazen Paper. The jury held in his favor on both counts, and the Court of Appeals affirmed both findings of liability. The Supreme Court granted certiorari to decide whether discharge of an employee motivated by the employer's desire to avoid the vesting of pension benefits is sufficient to state a disparate treatment claim under the ADEA. *Hazen Paper*, —— U.S. at ——, 113 S.Ct. at 1704. Because the evidence did not show that Hazen Paper's decision was based on Biggins's age, the Court held that his disparate treatment claim was deficient. *Id.* at ——, 113 S.Ct. at 1708.

■ *Hazen Paper* was, by its own terms, a disparate treatment case only. *Id.* at ——, 113 S.Ct. at 1706. Nevertheless, the Court's examination of the ADEA is instructive here. Critical to the Court's analysis was its belief that inaccurate stereotyping of the elderly was, "the essence of what Congress sought to prohibit in the ADEA." *Id.* The ADEA "requires the employer to ignore an employee's age ... it does not specify further characteristics that an employer must also ignore." *Id.* at ——, 113 S.Ct. at 1707. Hence, when an employer denies a worker an employment opportunity based on the belief that older employees are less efficient or less productive, the ADEA provides the worker with a cause of action. On the other hand, "[w]hen the employer's decision is wholly motivated by factors other than age, the problem of inaccurate and stigmatizing stereotypes disappears. This is true even if the motivating factor is correlated with age, as pension status typically is." *Id.* at ——, 113 S.Ct. at 1706. Nevertheless, "[b]ecause age and years of service are ana-

---

1. In the words of the EEOC's expert, Dr. Marc Bendick, Jr., "job applicants age 40 and older would be precluded from hiring at a rate 4.2 times the rate applicable to counterpart applicants aged less than 40."

lytically distinct, an employer can take account of one while ignoring the other, and thus it is incorrect to say that a decision based on years of service is necessarily 'age-based.' " *Id.* at ——, 113 S.Ct. at 1707.

■ Because the decision to fire Biggins was not based on misperceptions about the competence of older workers, Hazen Paper did not violate the ADEA. The Court's discussion makes clear that the ADEA prevents employers from using age as a criterion for employment decisions. On the other hand, decisions based on criteria which merely tend to affect workers over the age of forty more adversely than workers under forty are not prohibited. *Anderson v. Baxter Healthcare Corp.,* 13 F.3d 1120 (7th Cir.1993).

Our reading of *Hazen Paper* and the ADEA is supported by subsection (f) which reads:

> It shall not be unlawful for an employer, employment agency or labor organization—
>
> > (1) to take any action otherwise prohibited under subsection [ ] (a), . . . of this section where age is a bona fide occupational qualification reasonably necessary to the normal operation of the particular business, or where the differentiation is based on reasonable factors other than age.

29 U.S.C. § 623(f).

The exception for differentiation based on "reasonable factors other than age" is particularly noteworthy. It suggests that decisions which are made for reasons independent of age but which happen to correlate with age are not actionable under the ADEA. *Anderson v. Baxter Healthcare Corp.,* 13 F.3d 1120 (7th Cir.1993); *Metz v. Transit Mix, Inc.,* 828 F.2d 1202, 1220 (7th Cir.1987) (Easterbrook, J., dissenting). A similar provision in the Equal Pay Act which permits discrepancies in wages paid to male and female workers for "factors other than sex," has been construed to preclude disparate impact claims. *County of Washington v. Gunther,* 452 U.S. 161, 170–71, 101 S.Ct. 2242, 2248–49, 68 L.Ed.2d 751 (1981). A sensible interpretation of this provision is that it is further evidence of the ADEA's focus on eliminating decisions made based on stereotypes about age.

Our dissenting colleague insists that the EEOC's claim can be reconciled with the Court's decision in *Hazen Paper.* In his view, disparate impact theory is designed to bring scrutiny on actions which, although not invidiously discriminatory, might perhaps be the product of unconscious or lingering stereotypes. In this case, however, this approach is of limited applicability.

Perhaps most problematic is Judge Cudahy's reliance on Title VII jurisprudence which, though not unprecedented, *see, e.g., Geller v. Markham,* 635 F.2d 1027 (2d Cir. 1980); *Leftwich v. Harris–Stowe State College,* 702 F.2d 686 (8th Cir.1983); *E.E.O.C. v. Borden's, Inc.,* 724 F.2d 1390 (9th Cir.1984), seems inappropriate on the facts of this case. He concludes that because Title VII's prohibitions mirror those of the ADEA and Title VII permits disparate impact relief, "similar acceptance in ADEA cases" is required.

In the relevant statutory provisions, however, Title VII and the ADEA differ in a significant way. Subsection (2) of Title VII's prohibitions, which was the basis for the Supreme Court's holding in *Griggs v. Duke Power Co.,* 401 U.S. 424, 91 S.Ct. 849, 28 L.Ed.2d 158 (1971) (holding that Title VII allows claims based on disparate impact), proscribes any actions by employers which "limit, segregate, or classify [their] employees or *applicants for employment* in any way which would deprive or tend to deprive any individual of employment opportunities or otherwise adversely affect his status as an employee, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e–2(a)(2) (emphasis added). The "mirror" provision in the ADEA omits from its coverage, "applicants for employment." [2] In light of the ADEA's nearly ver-

---

2. The ADEA provision reads in relevant part:

> It shall be unlawful for an employer—
>
> > \* \* \* \* \* \*
> >
> > (2) to limit, segregate, or classify employees in any way which would deprive or tend to

batim adoption of Title VII language, the exclusion of job applicants from subsection (2) of the ADEA is noteworthy. Hence, while the dissent may find our decision creates a "practical difficulty," it is a result dictated by the statute itself.

■ Moreover, disparate impact theory does not relieve the EEOC of its obligation to prove the error of the employer's ways. Parker's policy of linking wages to experience is an economically defensible and reasonable means of determining salaries. This is borne out by the ADEA's "safe harbor" provision which permits an employer to "observe the terms of a bona fide seniority system ... which is not a subterfuge to evade the purposes of [the ADEA's prohibitions]." 29 U.S.C. § 623(f)(2). Though years of service may be age-correlative, *Hazen Paper* holds that "it is incorrect to say that a decision based on years of service is necessarily age-based," unless the plaintiff can demonstrate that the reason given was a pretext for a stereo-type-based rationale. *Hazen Paper*, —— U.S. at ——, 113 S.Ct. at 1707.

■ Ultimately, the EEOC must show that Parker's rationale is pretextual and that the salary system is predicated on some stereotype, conscious or unconscious. Otherwise, summary judgment in favor of Parker is proper. *Anderson v. Baxter Healthcare Corp.*, 13 F.3d 1120, 1126 (7th Cir.1994). The EEOC has not alleged how Parker's salary system might be a subterfuge for the belief that older teachers are less effective than younger teachers. The EEOC contends only that Parker's system disproportionately affects older applicants. As the district court held, this statistical correlation alone is insufficient to sustain a finding of ADEA liability. For these reasons, the decision of the lower court granting summary judgment in favor of Parker is

AFFIRMED.

deprive any individual of employment opportunities or otherwise adversely affect his status as an employee, because of such individual's age.

CUDAHY, Circuit Judge, dissenting.

The majority affirms the district court's grant of summary judgment on the apparent theory that *Hazen Paper Co. v. Biggins*, —— U.S. ——, 113 S.Ct. 1701, 123 L.Ed.2d 338 (1993), precludes the use of the disparate impact theory of liability under the ADEA. The disparate impact theory as applied here would concern the school's employment policy in refusing to depart from its practice of raising salaries for years of experience even when an older and more experienced teacher is willing to work for less. Such a policy disproportionately burdens older workers. I say "apparent theory" because the majority stops ever so slightly short of announcing this conclusion with perfect clarity. But that is the unmistakable import of the majority approach.

The majority's analysis begins with the premise that the decision not to hire Johnson was not based on misperceptions about the competence of older workers. If this characterization is accurate, then the majority is correct in saying that *Hazen Paper* precludes ADEA liability. My difficulty with the majority's approach is that its analysis begins with its conclusion: that the decision to pass Johnson by had nothing to do with stereotypical views of older workers. But, as I understand the use of disparate impact analysis in the age discrimination context, one of its important purposes is to answer this very question. Hence, disparate impact analysis should be allowed to proceed to determine whether the refusal to hire did really arise from stereotypical views of older workers. Not to do so is to say that "overqualified" (i.e. overage) music teachers need not apply.

**I.**

*Metz v. Transit Mix, Inc.*, 828 F.2d 1202 (7th Cir.1987), held that employers violate the ADEA when they make employment decisions based on factors that correlate with age in an obvious manner, like salary, the proximity of pension benefits' vesting or gray hair. The Supreme Court's recent opinion in

29 U.S.C. § 623(a).

*Hazen Paper,* —— U.S. ——, 113 S.Ct. 1701, rejects part of that framework. *Hazen Paper* focuses the scrutiny of the ADEA on discrimination on the basis of age *qua* age. The ADEA's purpose under *Hazen Paper* is to prohibit discrimination against older workers "on the basis of inaccurate and stigmatizing stereotypes." *Id.* at ——, 113 S.Ct. at 1706. An "employer cannot rely on age as a proxy for an employee's remaining characteristics, such as productivity, but must instead focus on those factors directly." *Id.*

So where an employer is *in fact* motivated by a desire to reduce salaries, it is permissible to fire higher-paid older workers and replace them with younger ones who will work for less. And perhaps if the employer *actually* has an aversion to gray hair, she can make her employment decisions accordingly. But, even so, *Hazen Paper* does not spell the end of the ADEA. It remains unlawful to invoke pretextually an ostensibly neutral factor that tends to correlate with age, while actually laboring under forbidden "inaccurate and stigmatizing stereotypes." *Id.* at —— – ——, 113 S.Ct. at 1706–07 ("We do not preclude the possibility that an employer who targets employees with a particular pension status on the assumption that these employees are likely to be older thereby engages in age discrimination." *Id.* at ——, 113 S.Ct. at 1707).

All of this tells us about the underlying theory of ADEA liability, not the method of proof. Even before *Hazen Paper* there was substantial disagreement about the permissibility of premising ADEA liability on a showing of disparate impact. *See Markham v.*

*Geller,* 451 U.S. 945, 101 S.Ct. 2028, 68 L.Ed.2d 332 (1981) (Rehnquist, J., dissenting from denial of certiorari).[1] And while the three concurring justices in *Hazen Paper* believed that "there are substantial arguments that it is improper to carry over disparate impact analysis from Title VII to the ADEA," —— U.S. at ——, 113 S.Ct. at 1710 (Kennedy, J., concurring), there is no suggestion that *Hazen Paper* itself answers the question.[2]

So the question presented by this appeal is whether a plaintiff may endeavor to prove that an employer discriminated on the basis of age *qua* age by implementing a particular employment practice that disproportionately burdens older workers.

## II.

The answer to that question depends mostly on what one thinks are the purposes of disparate impact liability. Implicit in the majority's approach is the view that employers are held liable under a disparate impact theory even where the practice or policy they have implemented isn't *really* discriminatory. As I have indicated, the employment policy at issue in this case is the school's refusal to depart from its policy of escalating salaries in relation to years of experience, where an older and more experienced teacher is willing to work for less.

The majority says that "there is no allegation that Francis Parker's salary system is a subterfuge for its belief that older teachers are less effective than younger teachers." But it would not appear to me that such a conscious and invidious scheme would need

---

1. "The courts and the EEOC have indicated that the impact analysis of *Griggs v. Duke Power Co.* is applicable to the ADEA." Mack A. Player, *Employment Discrimination Law,* § 6.10, at 525 (1988). *See Geller v. Markham,* 635 F.2d 1027 (2d Cir.1980), *cert. denied,* 451 U.S. 945, 101 S.Ct. 2028, 68 L.Ed.2d 332 (1981); *Maresco v. Evans Chemetics,* 964 F.2d 106, 115 (2d Cir. 1992); *EEOC v. Westinghouse Electric Corp.,* 725 F.2d 211 (3d Cir.1983), *cert. denied,* 469 U.S. 820, 105 S.Ct. 92, 83 L.Ed.2d 38 (1984); *Abbott v. Federal Forge, Inc.,* 912 F.2d 867, 872 (6th Cir.1990); *Wooden v. Board of Educ.,* 931 F.2d 376, 379 (6th Cir.1991); *Leftwich v. Harris–Stowe State College,* 702 F.2d 686 (8th Cir.1983); *EEOC v. Borden's Inc.,* 724 F.2d 1390 (9th Cir. 1984); *Shutt v. Sandoz Crop Protection Corp.,* 934 F.2d 186, 188 (9th Cir.1991); *Allison v. Western Union Tel. Co.,* 680 F.2d 1318 (11th Cir.1982); *Mac–Pherson v. University of Montevallo,* 922 F.2d 766, 770–71 (11th Cir.1991).

2. Commentators on the subject have also offered divergent views. *See* Note, *Age Discrimination and the Disparate Impact Doctrine,* 34 Stan. L.Rev. 837 (1982) (theory unavailable); Note, *Disparate Impact and the Age Discrimination in Employment Act,* 68 Minn.L.Rev. 1038 (1984) (theory available); Steven J. Kaminshine, *The Cost of Older Workers, Disparate Impact, and the Age Discrimination in Employment Act,* 42 Fla. L.Rev. 229 (1990) (purporting to offer "a more balanced approach").

to be alleged in order to state a claim under the ADEA.

The basic prohibition of the ADEA makes it unlawful to "discriminate against any individual ... because of such individual's age." ADEA § 4(a)(1), 29 U.S.C. § 623(a). This language mirrors the anti-discrimination provision of Title VII.[3] In the Title VII context, the disparate impact method of proving "discrimination ... because of [membership in a protected class]" is well-established (codified, in fact, by the Civil Rights Act of 1991). *See Griggs v. Duke Power Co.*, 401 U.S. 424, 91 S.Ct. 849, 28 L.Ed.2d 158 (1971).

The *Griggs* disparate impact method recognizes that not all discrimination is apparent and overt. It is sometimes subtle and hidden. It is at times hidden even from the decisionmaker herself, reflecting perhaps subconscious predilections and stereotypes. *See* Charles Lawrence. The disparate impact method therefore requires employers to determine which of their employment practices and policies burden a protected class in a disproportionate way.

But such practices need not *necessarily* be abandoned. They are nonetheless permissible, despite their disparate impact, where they are supported by a "business necessity." The point of that defense is to rebut the inference of discrimination (even unconscious discrimination) that the disparate impact tends to demonstrate. If business necessity is shown, we can assume that the practice in question was established *because* of that necessity, not merely as a product of stereotyping.

Of course, in the equal protection context the requirements for proving discrimination are far stricter. There, *Washington v.*

*Davis*, 426 U.S. 229, 96 S.Ct. 2040, 48 L.Ed.2d 597 (1976), requires precisely the sort of smoking gun evidence of conscious discriminatory motive and purpose that *Griggs'* more layered approach obviates.[4] Today's majority essentially holds ADEA plaintiffs to a *Washington v. Davis* standard. I see no reason for such a departure.

### III.

The majority offers two reasons for its result. The first comes from ADEA § 4(f)(1), 29 U.S.C. § 623(f)(1). That provision provides an affirmative defense to employers for actions taken "where ... the differentiation is based on reasonable factors other than age." Judge Easterbrook, dissenting in *Metz*, suggested that this language precluded the availability of disparate impact liability in ADEA cases. *Metz*, 828 F.2d at 1212–13. And today's majority agrees.

But it seems to me that the disparate impact method already provides a defense for factors that are determined to be based on reasonable factors other than age—the business necessity defense. While as a general matter, it is true that we ought to interpret statutes to avoid rendering language superfluous, it seems clear to me that § 4(f)(1) simply codifies the business necessity defense. It does not preclude the availability of disparate impact liability.

The second reason the majority offers to support its conclusion is the Supreme Court's decision in *Hazen Paper*. But I believe that the disparate impact theory of liability is designed as a means to *detect* employment decisions that reflect "inaccurate and stigmatizing stereotypes," —— U.S. at ——, 113

---

**3.** The majority takes issue with the suggested parallel between Title VII and the ADEA. As noted in footnotes 1 and 2, this parallel cannot be characterized as novel. Title VII's appeal as persuasive authority in ADEA cases is not altered by the fact that the present case deals with "applicants" for employment. Whether or not subsection (2) of the unlawful practices section excludes applicants for employment is not as self-evident as the majority maintains. 29 U.S.C. § 623(a)(2). *See Geller*, 635 F.2d 1027 (2d Cir. 1980) (recognizing a disparate impact claim under the ADEA for an applicant in a position parallel to that of Johnson). There is also a good argument for the availability of disparate impact

analysis under subsection (1). 29 U.S.C. § 623(a)(1). *See Colby v. J.C. Penney Co., Inc.*, 811 F.2d 1119, 1127 (7th Cir.1987) (holding that plaintiff had stated a valid disparate impact claim under subsection (1) of Title VII's unlawful practices section, 42 U.S.C. § 2000–e–2).

**4.** An exception, however, is recognized for jury selection challenges. The "impact-inference" standard applicable in that setting, *see Casteneda v. Partida*, is functionally indistinguishable from the type of disparate impact analysis set out in *Griggs*.

S.Ct. at 1706. This is precisely the determination that *Hazen Paper* says the ADEA is intended to outlaw. I do not believe its use is in any way incompatible with ADEA liability. The basic practical difficulty with the majority's result is that it provides an opportunity for employers to exclude older applicants from lower-level jobs simply by declaring the applicants "overage" (i.e. entitled to earn an excessive salary for the job they seek.).