**U.S. EQUAL EMP. OPP. COMM'N, Plaintiff,**

**v.**

**NEWPORT MESA UNIF. SCH. DIST., et al., Defendants.**

**No. SA CV 94–738 GLT [JJ].**

United States District Court, C.D. California, Southern Division.

July 18, 1995.

Pamela J. Thomason and Robin M. Bernhardt, U.S. E.E.O.C., Los Angeles, CA, for plaintiff.

Sue Ann Salmon, Lynberg & Watkins, P.C., Los Angeles, CA, for defendant Newport–Mesa Unified School District.

Stewart Weinberg, Van Bourg, Weinberg, Roger & Rosenfeld, P.C., Oakland, CA, for Newport Mesa Federation of Teachers.

## ORDER GRANTING DEFENDANTS' MOTIONS FOR SUMMARY JUDGMENT

TAYLOR, District Judge.

The Equal Employment Opportunity Commission brought this age discrimination suit against a school district and the union representing the district's teachers. The defendants negotiated a salary structure that gives higher pay to teachers with greater experience. The district prefers to hire inexperienced teachers to minimize its payroll costs. Plaintiff contends this policy disparately affects older job applicants and violates the Age Discrimination in Employment Act.

These motions raise three issues of first impression in this circuit: (1) whether the 11th Amendment bars federal-court suits against states under the Age Discrimination in Employment Act ("ADEA"); (2) whether the ADEA permits an employer to prefer job applicants who command lower salaries if the preference disparately affects older applicants; and (3) whether a union-negotiated seniority system that gives new employees credit for prior experience violates the ADEA by making older, more experienced applicants more expensive and therefore less desirable to the employer.

The Court finds the 11th Amendment does not bar suits against states under the ADEA. However, the Court GRANTS summary judgment to the school district and the union because the school district is justified in preferring to hire lower-salaried applicants, and the collective bargaining agreement does not violate the ADEA.

## I. BACKGROUND

Plaintiff EEOC filed this suit under the ADEA on behalf of a class of teachers older than 40. Defendants are the Newport Mesa Unified School District and the Newport Mesa Federation of Teachers. The District and the Union agreed to a salary table that determines teacher's salaries according to their qualifications (i.e., educational background) and experience. A teacher's starting salary is set by his or her qualifications and is increased as the teacher accrues years of experience. Newly hired teachers who have taught in other districts are given credit for up to six years of outside experience and therefore command higher salaries than teachers with similar qualifications but no experience. The District prefers to hire less experienced teachers to reduce payroll costs and stay within its budget.

In the summer of 1991, 42–year–old Marilyn Weinman applied for a position as a kindergarten teacher. She had more experience than any other applicant, and her master's degree placed her in the highest qualifications column. The principal recommended she be hired, but the District's Director of Human Resources rejected the recommendation because of the District's financial condition and budgetary constraints. He decided it would be more prudent to hire an applicant with less experience and fewer qualifications and a consequently lower starting salary. Weinman's starting salary, had she been hired, would have been a little more than $44,000. The person hired instead received a starting salary of about $32,000.

The EEOC contends the District's policy of hiring less experienced teachers violates the ADEA because it disparately affects old-

er applicants. Both Defendants move for summary judgment on several grounds. The EEOC cross-moves for summary adjudication that Defendants' business necessity defenses fail as a matter of law and there is an age-neutral alternative that will meet the District's cost-cutting needs.

## II. DISCUSSION

### A. The 11th Amendment

■ The District is a "state" for 11th Amendment purposes and is therefore generally immune from federal court suits. *Belanger v. Madera Unified Sch. Dist.*, 963 F.2d 248, 254 (9th Cir.1992), *cert. denied,* —— U.S. ——, 113 S.Ct. 1280, 122 L.Ed.2d 674 (1993). When Congress legislates pursuant to the authority granted by Section 5 of the 14th Amendment,[1] however, it may abrogate state immunity from federal suits. *Atascadero State Hosp. v. Scanlon,* 473 U.S. 234, 238, 105 S.Ct. 3142, 3145, 87 L.Ed.2d 171 (1985). To override the states' 11th Amendment immunity, Congress must express its intent to do so in "unmistakable" statutory language. *Id.* at 243, 105 S.Ct. at 3148. The Ninth Circuit has not yet considered whether the ADEA subjects the states to federal suits.

■ Congress, through the definition of "employer" in the ADEA, expressed its intention to abrogate the states' 11th Amendment immunity. Employers who violate the ADEA are subject to a variety of legal and equitable remedies. *See* 29 U.S.C. § 626(b). "Employers" include:

> . . . a State . . . and any agency or instrumentality of a State. . . .

29 U.S.C. § 630(b). The Courts of Appeals that have considered the issue appear to be unanimous in concluding the ADEA subjects the states to federal suit. *Ramirez v. Puerto Rico Fire Serv.*, 715 F.2d 694, 701 (1st Cir. 1983); *Davidson v. Board of Gov. of State Coll. & Univ.*, 920 F.2d 441, 443 (7th Cir. 1990); *Hurd v. Pittsburg State Univ.*, 29 F.3d 564, 565 (10th Cir.), *cert. denied,* —— U.S. ——, 115 S.Ct. 321, 130 L.Ed.2d 282 (1994). The Ninth Circuit has held similar

---

1. "Congress shall have power to enforce, by appropriate legislation, the provisions of this arti-    cle."

language in the Fair Labor Standards Act abrogates 11th Amendment immunity. *Hale v. Arizona,* 993 F.2d 1387, 1391 (9th Cir.) (en banc), *cert. denied,* —— U.S. ——, 114 S.Ct. 386, 126 L.Ed.2d 335 (1993).

For these reasons, the District is subject to federal court suit under the ADEA.

### B. *Disparate impact theory under the ADEA*

■ An ADEA plaintiff may proceed under either a "disparate treatment" or a "disparate impact" theory. *EEOC v. Local 350, Plumbers and Pipefitters,* 998 F.2d 641, 648 n. 2 (9th Cir.1992) (as amended 1993). Defendants contend *Local 350* is no longer good law after *Hazen Paper Co. v. Biggins,* —— U.S. ——, 113 S.Ct. 1701, 123 L.Ed.2d 338 (1993) (no disparate treatment where employer terminated employee to prevent pension rights from vesting), and *EEOC v. Francis W. Parker Sch.,* 41 F.3d 1073 (7th Cir. 1994), *cert. denied,* —— U.S. ——, 115 S.Ct. 2577, 132 L.Ed.2d 828 (1995) (concluding that, under *Hazen Paper's* reasoning, no disparate impact theory can exist under ADEA). This contention is incorrect. In *Hazen Paper,* the Supreme Court specifically declined to decide whether a disparate impact theory was available under the ADEA. —— U.S. at ——, 113 S.Ct. at 1706. After *Hazen Paper,* a Ninth Circuit panel amended *Local 350* to say the disparate impact theory survived. 998 F.2d at 648 n. 2. Because no later Supreme Court or Ninth Circuit case has held otherwise, this Court is bound to follow *Local 350* and permit the EEOC to proceed under a disparate impact theory.

■ The disparate impact theory is available to job applicants as well as employees. Defendants argue even if § 4(a)(2) of the ADEA, 29 U.S.C. § 623(a)(2), does allow for a disparate impact theory, it does not protect job applicants. *See Parker,* 41 F.3d at 1077–78 (so holding). Their argument fails because § 4(a)(1) both allows for a disparate impact theory and protects job applicants. Undisturbed Ninth Circuit authority holds a disparate impact theory can be maintained under § 4(a)(1). *EEOC v. Borden's Inc.,* 724 F.2d 1390, 1394–95 (9th Cir.1984), *overruled on other grounds, Public Employees Ret. Sys. of Ohio v. Betts,* 492 U.S. 158, 173–75, 109 S.Ct. 2854, 2864–66, 106 L.Ed.2d 134 (1989). The statute's language protects applicants:

> It shall be unlawful for an employer to fail or refuse to hire [any individual] because of such individual's age.

29 U.S.C. § 623(a)(1). Thus, in this circuit, an applicant can state an ADEA claim by alleging a hiring practice disparately affects a protected class.

■ As many as three steps may be involved in establishing disparate impact liability under the ADEA. *Rose v. Wells Fargo & Co.,* 902 F.2d 1417, 1424 (9th Cir.1990). First, the plaintiff must identify a practice of the employer and show it has a disparate effect on a protected class. If the plaintiff establishes a prima facie case, the employer may, among other options, show the practice is justified under the terms of the statute. Finally, if the employer justifies the practice as a business necessity, the plaintiff may prevail by showing an alternative practice would serve the same business purpose without the discriminatory effect.[2]

Because the EEOC has not completed discovery, it cannot now show the required disparate impact. All parties assume for the sake of these motions that the EEOC will eventually be able to establish a prima facie

---

2. This procedure is structurally similar to the three-step process for disparate treatment claims. The two should not be confused, however, because they differ substantially in purpose and content. The disparate treatment test sets out burdens of production each side must meet to survive summary judgment, while the disparate impact test establishes burdens of proof on substantive claims and defenses. The nature of the prima facie showings are quite different. Perhaps most important to the litigants, both the plaintiff's burden in establishing a prima facie case and the employer's burden in establishing business necessity are considerably heavier than the analogous parts of the disparate treatment process. *Compare St. Mary's Honor Center v. Hicks,* —— U.S. ——, ——–——, 113 S.Ct. 2742, 2746–50, 125 L.Ed.2d 407 (1993) (describing disparate treatment test and characterizing prima facie test as "minimal" and employer's response as mere burden of production) *with Rose,* 902 F.2d at 1424–25 (describing disparate impact test and closely scrutinizing plaintiff's prima facie showing).

case. Defendants seek summary judgment, contending that, even if the EEOC does establish a prima facie case, the challenged practices are justified as business necessities. The EEOC asks for summary adjudication that the business necessity defense fails as a matter of law or is overcome by a less discriminatory alternative.

### C. Taking potential salary into consideration

█ The District justifies its practice by its need to minimize payroll costs and cites § 4(f)(1) of the ADEA, which permits an employer to act "based on reasonable factors other than age." 29 U.S.C. § 623(f)(1). The EEOC contends this justification is inadequate because an applicant's potential salary is not a "reasonable factor other than age." The Ninth Circuit has not decided the question. *See Haydon v. Rand Corp.,* 605 F.2d 453, 455 (9th Cir.1979) (declining to decide when employer may make decisions based on employees' relative costs).

This Court declines to follow out-of-circuit authority suggesting cost is not a "reasonable factor other than age." Neither of the cases cited by the EEOC is convincing. In one, a school district adopted a policy of hiring only teachers with fewer than six years' experience. *Geller v. Markham,* 635 F.2d 1027, 1030 (2nd Cir.1980), *cert. denied,* 451 U.S. 945, 101 S.Ct. 2028, 68 L.Ed.2d 332 (1981). In the other, a college reduced the number of tenured faculty positions in favor of non-tenured positions. *Leftwich v. Harris–Stowe St. Coll.,* 702 F.2d 686, 689 (8th Cir.1983).[3] Both policies disparately affected older job applicants, both were justified as cost-saving measures, and both were struck down.

Both courts relied heavily on the Department of Labor's interpretation of the ADEA:

It should also be made clear that a general assertion that the average cost of employing older workers as a group is higher than the average cost of employing younger workers as a group will not be recognized as a differentiation under the terms and provisions of the Act, unless one of the other statutory exceptions applies. To classify or group employees on the basis of age for the purpose of comparing costs, or for any other purpose, necessarily rests on the assumption that the age factor alone may be used to justify a differentiation— an assumption plainly contrary to the terms of the Act and the purpose of Congress in enacting it. Differentials so based would serve only to perpetuate and promote the very discrimination at which the Act is directed.

29 C.F.R. § 860.103(h) (1979), *cited in Geller,* 635 F.2d at 1034; *Leftwich,* 702 F.2d at 692. The *Geller* and *Leftwich* courts' reliance on this regulation is difficult to justify, since it does not apply to disparate impact cases. *See Markham v. Geller,* 451 U.S. 945, 948, 101 S.Ct. 2028, 2030, 68 L.Ed.2d 332 (1981) (Rehnquist, J., dissenting from denial of certiorari). The regulation applies only to policies that classify employees or applicants on the basis of age. The first sentence says an employer cannot justify its action on the basis of a generalization about older employees. The second sentence explicitly applies to classifications based on age and says an employer may not assume age correlates with undesirable characteristics. The final sentence simply, and correctly, states why the practices described in the first two sentences are illegal: the core purpose of the ADEA is to prevent employers from acting on the basis of stereotypes or generalizations about older workers.

The current version[4] of the regulation shows more clearly that it applies only to employers who justify their actions by generalizations about older workers:

A differentiation based on the *average cost* of employing older employees *as a group* is unlawful except with respect to employee benefit plans which qualify for the section 4(f)(2) exception to the Act.

29 C.F.R. § 1625.7(f) (1994) (emphasis added); *see also* 29 C.F.R. § 1620.22 (1994) (sim-

---

**3.** *But see EEOC v. Atlantic Comm. Sch. Dist.,* 879 F.2d 434, 437 (8th Cir.1989) (declining to apply *Leftwich* to hiring).

**4.** The EEOC promulgated the current regulation after replacing the Department of Labor as the enforcing agency.

ilar interpretation of analogous clause in Equal Pay Act).

There is no evidence the District's hiring decisions are based on the average cost of employing older teachers. Weinman was not rejected because older teachers generally have higher salaries. She was rejected because *she* would have cost more than the person who was hired. Granting the EEOC's regulatory interpretation due deference, the regulation simply does not apply to this case. Insofar as *Geller* and *Leftwich* suggest otherwise, the Court must respectfully disagree.

Nor could the regulation be rewritten to apply to this and other disparate impact cases by prohibiting reliance on cost as a justification. The plain language of the statute shows an employer may take cost into account in at least some circumstances. Cost is a factor other than age, and it would be unrealistic to suggest cost could never be a reasonable basis for a businessperson's actions. The question is not whether cost can be taken into account, but when. The issue is what the employer must show to establish the justification.

The EEOC, in both its briefs and its regulations, *see* 29 C.F.R. § 1625.7(d), suggests the reasonable factor clause requires the same standards of proof as the business necessity justification of Title VII. As a matter of statutory construction, this interpretation seems unlikely. The Supreme Court and the Ninth Circuit have found the disparate impact theory, including the business necessity defense, in the Title VII analogues to §§ 4(a)(1) and 4(a)(2) of the ADEA. If the defense is already provided by those sections, the reasonable factor clause as interpreted by the EEOC would be surplusage. The reasonable factor clause is not found in Title VII, which suggests Congress intended employers to have more leeway in considering factors that disparately affect older workers under the ADEA than factors that disparately affect classes protected under Title VII. Finally, Congress recently codified and al-

tered the disparate impact test in Title VII, *see* 42 U.S.C. § 2000e–2(k), but did not similarly amend the ADEA, so the two texts are even less susceptible of identical interpretation than before. *See Finnegan v. Trans World Airlines, Inc.*, 967 F.2d 1161, 1163 (7th Cir.1992) (declining to reach effect of Title VII amendments on ADEA).

More fundamental is the problem of applying the concept of business necessity to an employer's consideration of an applicant's salary. In a for-profit enterprise, the essence of employment decisions is whether an employee's salary is justified by that employee's productivity. Even a public entity like the District, so long as its budget is finite, must base its hiring decisions on whether an applicant's cost is justified by the applicant's value. Thus, all employers must consider an applicant's potential salary when making hiring choices:

> Decisions based on the relation between the value of the employee's work and the pay he receives for it are scarcely arbitrary; to the contrary, they are essential in every business. This *is* individualized decisionmaking, the opposite of the rote and pointless tests the Supreme Court had in mind in *Griggs* [*v. Duke Power Co.*, 401 U.S. 424 [91 S.Ct. 849, 28 L.Ed.2d 158] (1971) ].

*Metz v. Transit Mix, Inc.*, 828 F.2d 1202, 1217 (7th Cir.1987) (Easterbrook, J., dissenting) (emphasis in original). Because a policy of considering the potential salaries of two competing applicants is "based on [a] reasonable factor[] other than age," it is permissible under § 4(f)(1) of the ADEA.

This is not to say an employer can always escape liability simply by reciting such a policy. Where salary acts as a proxy for age, consideration of salary may be no different from direct consideration of age. *See Local 350,* 998 F.2d at 646–47 (policy applying to pension recipients is age-based where retiree must be at least 55 to receive pension). Nor may the "policy" be used as a pretext [5] to cover up an illicit motive. More-

---

5. The EEOC contends there is a genuine issue of material fact whether the District's stated justification is a pretext. The EEOC points to evidence showing the District could have employed Wein-

man at her projected $44,000 salary without breaking its budget and says a reasonable jury could conclude the District's Director of Human Resources was incorrect when he testified at his

over, as the EEOC's regulations state, it is illegal to forego a case-by-case analysis and discriminate against older applicants as a class based on their average salary. Finally, a disparate impact claim can survive the employer's reliance on a reasonable non-age cost factor if the claimant proves there is a less discriminatory means of achieving the same cost savings.

### D. Less discriminatory alternative

■ The EEOC proposes a policy that, it contends, would achieve the same cost savings while eliminating the disparate effect: rather than rejecting applicants like Weinman, the District could offer them jobs at a lower salary. Weinman says she would have accepted the same salary the hired employee received, allowing the District to hire her at the same cost. Therefore, says the EEOC, it has overcome the District's cost-reduction justification. *See Metz,* 828 F.2d at 1208 (senior employee's high salary not a non-discriminatory basis for firing him where he was not offered option of taking pay cut).

The collective bargaining agreement, however, requires the District to pay new teachers according to the bargained-for salary scale and forbids it to negotiate individual arrangements. The EEOC has therefore impleaded the Union, contending the collective bargaining agreement violates the ADEA and must be amended.

■ Section 4(f)(2)(A) of the ADEA shields the collective bargaining agreement from the EEOC's attack. That section permits employers and unions

to take any action otherwise prohibited ... to observe the terms of a bona fide seniority system that is not intended to evade the purposes of this chapter....

29 U.S.C. § 623(f)(2)(A). Even if a seniority system has a disparate effect on a protected class, the system can be attacked only by showing it was created with a discriminatory intent. *Cook v. Pan Am. World Airways, Inc.,* 771 F.2d 635, 644 (2nd Cir.1985), *cert. denied,* 474 U.S. 1109, 106 S.Ct. 895, 88 L.Ed.2d 929 (1986), *overruled on other grounds, Lorance v. AT & T Tech., Inc.,* 490 U.S. 900, 109 S.Ct. 2261, 104 L.Ed.2d 961 (1989). Because the EEOC relies solely on a disparate impact theory in this case, the issue is whether the challenged practice is a "term" of a bona fide seniority system. Although there is almost no authority construing this provision of the ADEA, the Supreme Court's interpretation of the analogous section of Title VII leads the Court to resolve this issue in favor of the District and the Union.

The EEOC must concede the salary table is a seniority system. Within each qualifications column, salaries are mechanically determined by how many years of service a teacher has. The explicit connection between length of employment and salary is perhaps the paradigm of a seniority system. The EEOC takes no issue with teachers advancing through the steps of the table—once they have been hired.

What the EEOC does challenge is the mandatory initial placement of new teachers with three or more years of experience at steps two or three of the table.[6] The Su-

---

deposition that the District faced "financial ruin." Whether the District believed it would be financially ruined if it hired Weinman or merely wanted to save $12,000 for use elsewhere, however, there is no dispute that the District's motivation was cost. The EEOC also relies on the Director's admission that he could not recall rejecting any other applicant recommended by a principal because of the applicant's high salary. Even if the District has not applied its policy consistently, there is no reason to believe from this record that its failure to hire Weinman was based on her age or any factor other than her high salary. Indeed, if a jury found Weinman was the only applicant ever to be rejected because of the policy, the EEOC could not establish

a prima facie case of disparate impact, and this class action suit would be meritless.

**6.** Teachers with fewer than three complete years of experience are in step one. After three years, a teacher advances to step two, and moves on to step three after six years. Newly hired teachers are given credit for up to six years of outside experience, so they can enter no higher than step three. For purposes of these motions, the Court assumes the EEOC will be able to demonstrate, as part of its prima facie case, that credit for outside experience causes a disparate impact. It is interesting to note, however, that while experience might correlate strongly with age, an applicant's training is a far more significant factor in

preme Court, construing § 703(h) of Title VII, strongly suggested in dicta that the initial placement of workers in a seniority scale is part of a "seniority system":

> In order for any seniority system to operate at all, it has to contain ancillary rules that accomplish certain necessary functions, but which may not be directly related to length of employment. For instance, every seniority system must include rules that delineate how and when the seniority time clock begins ticking.... Every seniority system must also have rules that define which passages of time will "count" towards the accrual of seniority and which will not.... Rules that serve these necessary purposes do not fall outside § 703(h) simply because they do not, in and of themselves, operate on the basis of some factor involving the passage of time.

*California Brewers Ass'n v. Bryant*, 444 U.S. 598, 607–08, 100 S.Ct. 814, 820, 63 L.Ed.2d 55 (1980) (footnotes omitted). The Supreme Court provided the following example:

> [A] collective bargaining agreement could specify that an employee begins to accumulate seniority rights at the time he commences employment with the company, *at the time he commences employment within the industry*, at the time he begins performing a particular job function, or only after a probationary period of employment.

*Id.* at 607 n. 17, 100 S.Ct. at 820 n. 17 (emphasis added).

In enacting § 4(f)(2), Congress protected the discretion of employers and unions to select which of these options, if any, to use. The Union and the District weighed their options and, in the process of negotiation, chose to give newly hired teachers limited seniority credit for outside experience. Management and labor are free to establish a seniority system appropriate to their particular situation through collective bargaining, *see id.* at 608, 100 S.Ct. at 820, and crediting employees for experience gained under a different employer can be a legitimate provision of that system. The Union apparently decided to decrease experienced teachers' chances of finding a job in order to increase the salaries of those who do find jobs. The EEOC believes experienced applicants would be better off if the Union had made a different decision. The ADEA, however, leaves that decision to the Union and the District, not the EEOC or the Court.

## III. DISPOSITION

The Court has jurisdiction over all parties and the subject matter, in part because Congress has abrogated states' 11th Amendment immunity for ADEA cases. On the merits, both Defendants are entitled to summary judgment on the strength of their business necessity defenses, as the EEOC has failed to establish a less discriminatory alternative. Summary judgment is GRANTED to both Defendants.

---

determining potential salary. The greatest possible difference in salary in any qualifications column between an applicant with no experience and one with six or more years of experience is a little more than five percent. The potential gaps between applicants of different qualifications levels are much larger. For example, of the $12,088 difference between the salaries commanded by Weinman and the person who was hired, no more than $2,187 is attributable to Weinman's greater experience. The remainder—nearly $10,000—is caused by Weinman's being in the highest qualifications column, while the person hired was in the middle of the table.

These facts point to a practical weakness in the EEOC's proposed less discriminatory alternative. If the District had been able to offer Weinman a step one salary for her level of qualifications, she still would have commanded a salary almost $10,000 greater than that given to the other applicant. To equalize the salaries, Weinman would also have to have been placed, presumably permanently, in an inappropriate qualifications column. While giving up credit for outside experience can be seen as a minor adjustment to the step system, placing teachers in arbitrary qualifications columns irrespective of their training would destroy the basis of the salary table.